**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

IN RE: THOMAS J. CLEAR III                    No. 1:25-mc-00017-KG

**ORDER TO SHOW CAUSE**

Ricardo Mendez recently entered into a Plea Agreement in which he pled guilty to

charges of RICO Conspiracy, Bribery of an Agent of an Organization Receiving Federal Funds,

Interference with Commerce by Extortion Under Color of Official Right, Aiding and Abetting

and Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official

Right. *See* Doc. 2 filed January 24, 2025, in *USA v. Mendez*, No. 1:25-cr-00139-DHU (D.N.M.)

("Plea Agreement"). Mr. Mendez' Plea Agreement states:

> 9.     In 2007, I began working for co-conspirator 1's law firm, which specialized in defending persons charged with driving while intoxicated (DWI) . . .

> 10.    Since at least 2008, I admit that I conspired with co-conspirator 1, as well as sworn law enforcement officers and deputies with the Albuquerque Police Department (APD), New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO) (collectively, "the Officer Members") to engage in a scheme that targeted persons arrested for DWI (DWI Offenders). Under this scheme, co-conspirator 1, the officers, and I would arrange for the Officer Members to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrests, allowing co-conspirator 1 to move to dismiss the proceedings.
> ....

> 12.    As part of the scheme, DWI Offenders, both aware and unaware of the scheme, retained co-conspirator 1 as their attorney following their DWI arrests. Co-conspirator 1 and/or I consulted with the DWI Offender and strongly encouraged that the attorney retainer fee be paid in cash. When the DWI Offender paid the cash retainer, co-conspirator 1 and I were paid cash in addition to their law firm salary. In addition, the Officer Members were often paid in cash but, at times, also received other benefits and things of value, including but not limited to free legal services, gift cards, hotel rooms, and other gifts. I typically handled communications with the officers to convey the payment amounts and to arrange meetings to exchange payments. However, on occasion, I admit that co-conspirator 1 paid the Officer Member directly.

....

    15.   . . . Once the DWI Offender retained co-conspirator 1, co-conspirator 1, the Officer Member, and I would coordinate the Officer Member's non-appearance at required settings on the state criminal case and the MVD administrative proceeding.

....

    21.   . . . I also admit that co-conspirator 1, other Officer Members, and I asked more senior APD Officer Members to use their positions and influence within APD to try to ensure that the DWI Officers were not investigated or disciplined in connection with their illegal activity.

Plea Agreement at 6-11.

Two news articles suggest that Mr. Clear may have been involved with the DWI scheme. One article states: "Rick Mendez, Clear's private investigator, pleaded guilty Friday to racketeering charges and told federal agents he and Clear paid off law enforcement to get DWI cases dismissed for more than a decade" and "It has been more than two weeks since FBI agents raided Clear's Albuquerque law office and the homes of his paralegal Ricardo 'Rick' Mendez and three APD officers on Jan. 18." Matthew Reisen and Colleen Heild, *One Attorney had high DWI dismissal rate with officers under investigation*, Albuquerque Journal (Feb. 3, 2024, updated Jan. 24, 2025), https://www.abqjournal.com/news/article_938b75a4-bc60-11ee-9134-4b51cfcb273c.html?utm_medium=social&utm_source=email&utm_campaign=user-share. The other states: "the scheme . . . went on until the FBI executed search warrants on multiple officers' homes and Attorney Clear's office in January 2024" and "Mendez said he worked with officers to make sure he and his boss, Attorney Clear scheduled court hearings at times that the officers were busy." Allison Giron and Ann Pierret, *First person pleads guilty in APD DWI dismissal scandal; NMSP, BCSO now named* (Jan. 24, 2025), https://www.krqe.com/news/crime/albuquerque-police-department-dwi-investigation/first-person-pleads-guilty-in-apd-dwi-dismissal-scandal-nmsp-bcso-now-named/.

The Judges in the District of New Mexico have an obligation to "maintain and enforce high standards of conduct" to uphold the integrity of the Court, maintain the public confidence in the judiciary, and not injure our system of government under law. Code of Conduct for United States Judges at 2-3 (March 12, 2019). The Court maintains and enforces high standards of conduct by, among other things, requiring attorneys who practice before the United States District Court for the District of New Mexico to comply with the New Mexico Rules of Professional Conduct. *See* D.N.M.LR-Civ. 83.9 ("The Rules of Professional Conduct adopted by the Supreme court of the State of New Mexico apply except as otherwise provided by local rule or by court order"); D.N.M.LR-Cr. 57.2 ("In all criminal proceedings, attorneys will comply with the Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico").

The Plea agreement and the two news articles contain statements which, if true, indicate Mr. Clear may have violated New Mexico Rule of Professional Conduct 16-804, Misconduct, which states:

> It is professional misconduct for a lawyer to:
>
> A. violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another;
>
> B. commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> C. engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> D. engage in conduct that is prejudicial to the administration of justice;
>
> E. state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
> ….

N.M.R.A. 16-804.

Given the nature of Mr. Clear's apparent conduct and the potential for undermining the public's confidence in the Court, the Court orders Mr. Clear to show cause why suspension, disbarment or other discipline is not appropriate. *See In re Bello*, 237 Fed.Appx. 363, 366 (10th Cir. 2007) ("The District of New Mexico has 'inherent supervisory power' over the conduct of attorneys appearing in its courtrooms and this power includes the ability 'to control admission to its bar and to discipline attorneys who appear before it'" and "To be sure, an attorney subject to disciplinary proceedings is entitled to procedural due process. Although this does not necessitate the provision of the full panoply of rights afforded to an accused in a criminal case, an attorney subject to discipline is entitled to receive reasonable notice of the allegations against him and an opportunity to respond") (citations and quotation marks omitted).

Mr. Clear may request that the undersigned appoint a panel of Judges to review his response to this Order and to conduct a hearing to determine whether suspension, disbarment or other discipline is appropriate. If Mr. Clear does not request the appointment of a panel of Judges, the undersigned will review his response and determine whether suspension, disbarment or other discipline is appropriate. If Mr. Clear requests a hearing, he must state the reasons why he believes a hearing is necessary. *See* D.N.M.LR-Civ. 83.10(a) ("The Chief District Judge will appoint a panel of federal judges ... [which may] *if necessary*, conduct a hearing to determine whether discipline, suspension or disbarment is appropriate") (emphasis added). Because the undersigned or the Panel may decide it is not necessary to conduct a hearing to determine whether discipline, suspension or disbarment is appropriate, Mr. Clear's response to this Order to Show Cause must include all the materials Mr. Clear wishes the undersigned or the Panel to consider.

Mr. Clear shall notify the Clerk if Mr. Clear is charged with a crime. *See* D.N.M.LR-Civ. 83.2(f)(4) ("If the attorney is charged in any court with a crime as defined in D.N.M.LR-Civ. 83.13, the attorney must, within 14 days after the attorney receives notice that the charge has been filed notify the clerk of this court in writing of the charge").

**IT IS THEREFORE ORDERED** that Mr. Clear shall, within 30 days of entry of this Order, show cause in writing why the Court should not discipline him due to the conduct described above. Failure to timely show cause will result in suspension, disbarment or other discipline.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**